**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

**SAMUEL DAVIS,**

                **Plaintiff,**

**v.**                                          **99-CV-0307(Sr)**

**STATE OF NEW YORK, et al.,**

                **Defendants.**
_____

## DECISION AND ORDER

In accordance with 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct all further proceedings in this case, including entry of final judgment. Dkt. #28.

Plaintiff, an inmate of the New York State Department of Correctional Services ("DOCS"), at the Attica Correction Facility ("Attica"), alleges that the defendants, Commissioner Glenn S. Goord; Superintendent Walter R. Kelly; Sergeant Eugene Stachewicz; Corrections Officer ("C.O."), Ronald Christensen; C.O. Martin McDonald; and C.O. Mary Barone, violated his Eighth Amendment right to be free from cruel and unusual punishment by routinely exposing him to excessive levels of second hand or environmental tobacco smoke ("ETS"), and threatened, intimidated, and harassed him in retaliation  for his complaints regarding such exposure.  Dkt. #1.  This Court's prior order granting defendants' motion for summary judgment dismissing the complaint was reversed, in part, by the Court of Appeals for the Second Circuit.  *See Davis v. New York*, 316 F.3d 93 (2d Cir. 2002).

Currently before the Court is defendants' motion for summary judgment (Dkt. #108), dismissing plaintiff's complaint for failure to establish the subjective component of an Eighth Amendment violation. Dkt. #109. Defendant Goord also seeks summary judgment on the basis of lack of personal involvement. Dkt. #109. Defendants McDonald, Christiansen and Barone also seek summary judgment on the ground that plaintiff failed to exhaust his allegations of physical assault, which do not rise to the level of excessive force in any event. Dkt. #109. Each of the defendants also seeks summary judgment on the ground of qualified immunity. Dkt. #109. For the following reasons, defendants' motion is denied in part and granted in part.

## BACKGROUND

Plaintiff was transferred to Attica on January 26, 1993. Dkt. #116, ¶ 4. He is a non-smoker. Dkt. #116, ¶ 14. When exposed to ETS, plaintiff alleges that he suffers from "watery eyes, severe congestion, allergic reactions, dizziness, and blackouts." Dkt. #116, ¶ 15. He also fears that he "will eventually develop a more serious and life-threatening illness or disease as a result of [his] prolonged forced exposure to excessive levels of second hand smoke while in the custody of DOCS." Dkt. #116, ¶ 16.

As of March 21, 1994, Attica established a Clean Air Policy prohibiting smoking in all public areas of the facility. Dkt. #117, Exh. W. The policy recognized that

> The U.S. Department of Health and Human Services has estimated that 30% of all cancers and 85% of all lung

> cancers are caused by smoking.  Further, more than 80% of
> severe lung diseases such as emphysema and chronic
> bronchitis are linked to smoking.  Risks associated with
> "passive smoking" are becoming more precisely identified as
> evidence accumulated [sic].  Studies have demonstrated
> higher rates of cancer among non-smokers who are
> exposed to smoke from tobacco used by smokers.

Dkt. #117, Exh. W, p.1.  The policy allowed inmates to smoke in their cells and in the

recreation yard, but not in congregate areas.  Dkt. #117, Exh. S, p.9; Dkt. #117, Exh. T,

pp.43-46; Dkt. #117, Exh. V, p.26.  Corrections officers were permitted to smoke

anywhere that inmates were permitted to smoke.  Dkt. #117, Exh. V, pp.30-31.


Beginning January 23, 1996, plaintiff resided in the honor block, a

housing area which affords certain privileges to inmates with exemplary conduct

records.  Dkt. #116, ¶ 7.  For example, honor block cells are larger and inmates residing

within honor block have access to cooking stations and a separate day room and

recreation yard, have fewer restrictions on their movement and are generally only

confined to their cells at night.  Dkt. #116, Exh. R, pp.18, 36; Dkt. #117, Exh. U, p.5;

Dkt. #117, Exh. V, pp.15-16, 23.


Many of the inmates housed on honor block smoke.  Dkt. #116, ¶ 20; Dkt.

#117, Exh. T, p.70.  C.O. Barone testified at her deposition that the smell of cigarettes

could generally be detected upon approach of the cell of an inmate who was smoking,

but denied that the smell was pervasive.  Dkt. #117, Exh. V, p.33.  To accommodate

plaintiff's request for a cell in an area with less smokers, C.O. McDonald moved him to

43 company, cell 19, on March 3, 1997.  Dkt. #116, ¶ 18 & Exh. R, pp.44-45, 69.  43

company is comprised of 22 honor block cells located against an interior wall with cell doors which exit to a gallery with 17 exterior windows.  Dkt. #116, ¶ 13.

On January 1, 1998, plaintiff alleges that C.O. McDonald physically assaulted, threatened, and verbally abused him on the stairway between the first and second floor of honor block.  Dkt. #116, ¶ 54.  On January 3, 1998, plaintiff claims that C.O. McDonald "deliberately came across the corridor out of his way and physically assaulted me by bumping into me as I was walking down the corridor heading toward D-block."  Dkt. #116, ¶ 55.  "Because of this persistent course of intimidation and harassment by defendant McDonald, by letter dated January 19, 1998, [plaintiff] wrote the Inspector General's office complaining about his conduct and asking for an investigation."  Dkt. #116, ¶ 56.

To minimize his exposure to ETS, plaintiff kept the gallery window across from his cell open.  Dkt. #116, ¶ 17.  Generally speaking, inmates were permitted to open and close the windows at will as weather conditions allowed.  Dkt. #117, Exh. T, pp.54-55; Dkt. #117, Exh. V, pp.24-25, 38.  However, C.O. Barone testified at her deposition that  inmates were not permitted to "wedge" the windows open with towels or other objects in an attempt to keep the wind from blowing them shut.  Dkt. #117, Exh. V, pp.36-38.  C.O. Barone specifically told plaintiff to stop wedging the windows open despite plaintiff's complaint that the gallery smelled of body odor, grease, cooking and cigarettes.  Dkt. #117, Exh. V, p.38.  C.O. Christensen also acknowledged at his deposition that plaintiff explained that he wanted the windows open because of the

-4-

secondhand smoke and that he complained about secondhand smoke.  Dkt. #117, Exh.

T, pp.59-60, 64.


        C.O. McDonald testified at his deposition that the inmates were

complaining to him that it was too cold because plaintiff was opening all of the windows

on the gallery.  Dkt. #116, Exh. R, pp.48-49.  C.O. McDonald testified that he

approached plaintiff twice on a one-to-one basis and said:

> Mr. Davis, you can't be opening these windows.  You are
> creating a disturbance with the people.  The thing he
> explained to me was he has problems breathing, difficulty
> breathing and I advised him again to go to sick call.

Dkt. #116, Exh. R, p.49.  Plaintiff continued opening the windows and the other inmates

continued to complain, so C.O. McDonald went to his supervisor, Sgt. Stachewicz.  Dkt.

#116, Exh. R, p.50.  C.O. McDonald testified that

> Mr. Davis, I think for the third time, approached me about
> difficulty breathing, that's why he has to have the windows
> open and I explained to him that you cannot continue this
> behavior.  I said you are creating a disturbance and I would
> be forced to move you out of the honor block.

Dkt. #116, Exh. R, p.51.


        On December 29, 1998, plaintiff alleges that C.O. McDonald and Sgt.

Stachewicz informed him that he would be moved out of honor block if he continued to

open the window across the gallery in front of his cell.  Dkt. #116, ¶ 25.  Although

plaintiff protested that other inmates opened their windows, Sgt. Stachewicz allegedly

informed plaintiff that "the only complaints I have received are about the windows

across from your cell being opened."  Dkt. #116, ¶ 27.  Plaintiff alleges that he told C.O.

McDonald and Sgt. Stachewicz that he opened the window because otherwise,

> There's smoke in there.  Those guys are smoking in there, I
> don't want to smell all that smoke.  McDonald said that there
> was smoke everywhere.

Dkt. #112, p.19.

On January 2, 1999, plaintiff alleges that C.O. Barone closed the gallery

window across from his cell, exposing him to excessive levels of second hand smoke.

Dkt. #116, ¶ 29.  Inmates were smoking at the time, as was C.O. Barone.  Dkt. #116,

¶ 31.

On January 4, 1999, plaintiff wrote a letter to DOCS Commissioner Glenn

S. Goord complaining that

> the smell of smoke fills the air and enter[s] my cell in a
> manner as though I was myself smoking.
>    As a result, I keep the window in front of my cell open
> for fresh air, ventilation and to combat the smell of the
> smoke, and to minimize my exposure to the Cigarette [sic]
> smoke and the health hazard that this smoke is potential
> [sic] causing.

Dkt. #116, Exh. I.  Plaintiff alleged that C.O. Barone, C.O. McDonald and Sgt.

Stachewicz were harassing him by threatening to move him out of honor block unless

he kept the windows closed.  Dkt. #116, Exh. I.  This letter was referred to Deputy

Commissioner Bartlett, who informed plaintiff that his complaint had been forwarded to

Superintendent Kelly.  Dkt. #110, ¶ 17; Dkt. #118, ¶ 17.  The Judicial Process

Commissioner wrote Superintendent Kelly on plaintiff's behalf by letter dated February

9, 1999, claiming that plaintiff was being subjected to excess smoke.  Dkt. #110, ¶ 18;

Dkt. #118, ¶ 18.  In response, Lt. McKeon was assigned to interview plaintiff and offer

him a move to C block so that he could have access to a window.  Dkt. #110, ¶ 19.


On February 14, 1999, C.O. Barone issued a misbehavior report charging

plaintiff with refusal to obey a direct order as a result of the following:

> On previous occasions I have tried talking to, warning &
> ordering Inmate Davis . . . NOT to wedge open the gallery
> window in front of his cell.  This morning on the 7:00 a.m.
> count 43 company was freezing.  Inmates from
> approximately 14 cell through 22 were standing for the count
> wrapped in blankets, hooded sweatshirts, winter coats & a
> few had on gloves . . . .
>      Reaching 19 cell on the count I saw the window open.
> It was wedged open (once again) with towel rolls & a piece
> of wood.  When I removed the rolled up towel I dropped
> them on the gallery & continued on the count.
>      When I released the inmates for chow, Davis crossed
> from his cell & picked up the towels & put them in his cell.

Dkt. #116, Exh. J.  Plaintiff was found guilty of the charge and subjected to a loss of his

next eligible commissary buy and 13 days loss of recreation.  Dkt. #116, Exh. L.


Plaintiff filed a grievance dated February 17, 1999 asserting the following:

> I am being told by Sergeant Stachewicz, Officer Marty
> McDonald and my housing company Officer Mary Barone to
> not open the window across [sic] in front of my cell,
> harassed and threaten [sic] by Officer Barone and others for
> opening and keeping the window across [sic] in front of my
> cell open and to be move [sic] out of Honor Block if I
> continue to open the window.  I am a non-smoker.  Yet I am
> exposed daily to cigarette smoke on a housing company
> because I am housed on a company[] where [sic] majority of
> the inmates smoke, and housed in a cell surrounded by
> inmates that are chain smoker[s] or smoke frequently.  To

minimize my exposure to cigarette smoke I open the window
for ventilation and to clear the air laden with smoke.

Dkt. #116, Exh. L.  Plaintiff requested:

(1) That I not be told by the Company Officer when and
when not to open the gallery windows; (2) that, as a non-
smoker, I be permitted to open the window in front of my
cell, unimpeded, for ventilation; (3) that the Company Officer
and others stop harassing me and arbitrarily closing the
window in front of my cell; (4) that the Company Officers and
other stop threaten[ing] me and threatening to have me
move[d] out of Honor Block for opening the window.

Dkt. #116, Exh. L.


On the morning of February 28, 1999, plaintiff alleges that C.O.
Christianson threw him against the wall and "manhandled" him after allegedly receiving
an anonymous note suggesting that he possessed weapons.  Dkt. #112, p.40.  Plaintiff
believes that C.O. Barone wrote the note.  Dkt. #112, p.42.  He moved to C block that
afternoon.  Dkt. #112, p.41.  At his deposition, plaintiff testified that he was forced to
move out of honor block after it was suggested to him that he could be "trapped off,"
*e.g*, have weapons planted in his cell to justify his removal, if he did not agree to move.
Dkt. #112, p.33.  At his deposition, C.O. McDonald testified that he recommended
plaintiff "be removed from the honor block because he was creating a disturbance,
where . . . either himself or other inmates were going to create physical harm."  Dkt.
#116, Exh. R, p.68.  C.O. Christensen recalled that plaintiff was removed from honor
block "for his safety" because of his attitude toward other inmates.  Dkt. #117, Exh. T,
p.74.

-8-

On March 10, 1999, the IGRC dismissed plaintiff's grievance because plaintiff was no longer housed in the honor block and subsequently informed him that a dismissal could not be appealed.  Dkt. #116, Exh. N & Q.

Effective January 1, 2001, smoking was prohibited within DOCS facilities. Dkt. #117, Exh. Y.  DOCS' Smoke-Free Policy recognizes that

> Exposure to environmental tobacco smoke (ETS) has been linked to a number of adverse health conditions.  In works published by the Surgeon General, the United States Environmental Protection Agency and the National Research Council, ETS exposure has been found to be causally associated with respiratory illnesses, including lung cancer, asthma and lower respiratory tract infections.  The Surgeon General has also concluded that the simple separation of smokers and nonsmokers within the same air space may reduce, but does not eliminate the exposure of nonsmokers to ETS.  As a consequence, because of the congregate nature of prisons, the problem of ETS smoke within correctional facilities can only be solved by the complete elimination of ETS from all buildings.

Dkt. #117, Exh. Y.  Despite this policy, C.O. Barone testified that she has smoked inside Attica, albeit "rarely," and C.O. Christensen admitted that inmates and/or corrections officers violate the policy by smoking inside.  Dkt. #117, Exh. T, p.48; Dkt. #117, Exh. V, pp. 32-33.

## DISCUSSION

**Summary Judgment**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law." Fed.R.Civ.P. 56(c). "In reaching this determination, the

court must assess whether there are any material factual issues to be tried while

resolving ambiguities and drawing reasonable inferences against the moving party, and

must give extra latitude to a pro se plaintiff." *Thomas v. Irvin*, 981 F. Supp. 794, 799

(W.D.N.Y. 1997) (internal citations omitted).


A fact is "material" only if it has some effect on the outcome of the suit.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Catanzaro v. Weiden*,

140 F.3d 91, 93 (2d Cir. 1998). A dispute regarding a material fact is genuine "if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.), *cert. denied*,

502 U.S. 849 (1991).


Once the moving party has met its burden of "demonstrating the absence

of a genuine issue of material fact, the nonmoving party must come forward with

enough evidence to support a jury verdict in its favor, and the motion will not be

defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of

conjecture or surmise." *Bryant*, 923 F.2d at 982.   A party seeking to defeat a motion

for summary judgment

> must do more than make broad factual allegations and
> invoke the appropriate statute.  The [party] must also show,
> by affidavits or as otherwise provided in Rule 56 of the
> Federal Rules of Civil Procedure, that there are specific
> factual issues that can only be resolved at trial.

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

Pursuant to Fed. R. Civ. P. 56(e), affidavits in support of or in opposition to a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  Thus, affidavits "must be admissible themselves or must contain evidence that will be presented in an admissible form at trial."  *Santos v. Murdock*, 243 F.3d 681, 683 (2d Cir. 2001), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *see also H. Sand & Co. v. Airtemp Corp.*, 934 F.2d 450, 454-55 (2d Cir. 1991) (hearsay testimony that would not be admissible if testified to at trial may not properly be set forth in an affidavit).

**Excessive Force**

Defendants argue that plaintiff's allegations of being bumped by defendant McDonald, handled roughly by defendant Christiansen and verbally harassed by defendant Barone are not sufficiently serious to implicate the Eighth Amendment's prohibition against excessive force.   Dkt. #109, p.12.  In addition, defendants argue that plaintiff failed to file any grievance with respect to his allegations of assault and harassment.  Dkt. #109, p.14.

Although the Court does not read plaintiff's complaint or other submissions as setting forth a claim of excessive force, the Court agrees with defendants that no such claim could be sustained because the alleged use of force is not "'sufficiently serious' by objective standards."  *Griffin v. Crippen,* 193 F.3d 89, 91 (2d Cir. 1999); *see Hudson v. McMillian*, 503 U.S. 1, 10 (1992) (*de minimus* use of physical

force excluded from constitutional recognition when "the use of force is not of a sort repugnant to the conscience of mankind.").   Plaintiff alleges that on January 1, 1998, C.O. McDonald physically assaulted, threatened, and verbally abused him on the stairway between the first and second floor of honor block.  Dkt. #116, ¶ 54.  On January 3, 1998, plaintiff claims that C.O. McDonald "deliberately came across the corridor out of his way and physically assaulted me by bumping into me as I was walking down the corridor heading toward D-block."  Dkt. #116, ¶ 55.  On the morning of February 28, 1999, plaintiff alleges that C.O. Christianson threw him against the wall and "manhandled" him after allegedly receiving an anonymous note suggesting that he possessed weapons.  Dkt. #112, p.40.  Plaintiff did not file any grievances with respect to his claims of harassment and assault.  Dkt. #112, p.81.  This is insufficient to support a cause of action for excessive force.


**ETS Exposure**

Defendants argue that, even assuming that plaintiff could establish the objective component of an Eighth Amendment claim, plaintiff's allegations do not demonstrate deliberate indifference because plaintiff generally failed to alert the defendants to his complaints of excessive  exposure to ETS.  Dkt. #109, p.4.  Once plaintiff submitted a written complaint, defendants took appropriate action to move plaintiff to another housing block.  Dkt. #109, p.8.  Defendants proffer DOCS' smoking policy and staggered implementation of a ban on indoor smoking as evidence of their attention to the issue of ETS within DOCS' facilities.  Dkt. #109, pp.9-10.

Plaintiff responds that his oral and written complaints are sufficient to place defendants on notice of his concern regarding his exposure to ETS and that the record reveals that defendants were aware of the prevalence of ETS throughout the facility and the serious health risks of such exposure. Dkt. #119, pp.19-20. Finally, plaintiff asserts that the reasonableness of defendants' response to his complaints, *to wit*, forcing him to forego the privileges of honor block housing for the possibility of reduced exposure to ETS in another housing block, is a question for the jury. Dkt. #109, pp. 8, 21.

In *Helling v. McKinney*, the Supreme Court held that an inmate states a cause of action under the Eighth Amendment by alleging that prison officials have, with deliberate indifference, exposed him to levels of ETS that pose an unreasonable risk of serious damage to his future health. 509 U.S. 25, 33 (1993). In order to establish his claim, the inmate must "prove both the subjective and objective elements necessary to prove an Eighth Amendment violation." *Id.* at 33-35. In order to satisfy the subjective component, the inmate "must prove deliberate indifference, considering the officials' current attitudes and conduct and any policies that have been enacted." *Warren v. Keane*, 196 F.3d 330, 333 (2d Cir. 1999) (internal quotation omitted), *quoting Helling*, 509 U.S. at 36. Deliberate indifference requires a showing that prison officials knew of and disregarded an excessive risk to inmate health and safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). An official must be aware of both the "facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Id.*

As evidenced by its 1994 Clean Air Policy, DOCS was aware of the dangers of ETS during the time frame encompassed by plaintiff's complaint.  Dkt. #117, Exh. W.  Moreover, there is evidence to suggest that defendants were aware of plaintiff's complaints of difficulty breathing due to ETS, but ignored his concerns in favor of other inmate's complaints about the temperature within the honor block.  For example, C.O. McDonald moved plaintiff in an attempt to accommodate his request for a cell in an area with fewer smokers; plaintiff told C.O. McDonald that he had difficulty breathing despite this placement; plaintiff alleges he told C.O. McDonald and Sgt. Stachewicz that he opened the windows because he didn't want to "smell all that smoke"; C.O. Christensen was aware that plaintiff wanted the windows open because of the smell of secondhand smoke; plaintiff complained to C.O. Barone that the honor block smelled of cigarettes; plaintiff wrote a letter to Commissioner Goord complaining of the smoke; and plaintiff filed a grievance complaining that he was surrounded by chain smokers.  Dkt. #112, p.19; Dkt. #116, ¶ 18; Dkt. #116, Exh. I; Dkt. #116, Exh. R, pp.44-45, 69; Dkt. #117, Exh. T, pp.59-60, 64; Dkt. #117, Exh. V, p.38.  Despite this information, there is evidence from which a reasonable jury could conclude that plaintiff was ordered to keep the window closed; labeled a troublemaker for continuing to open the window; subjected to discipline for opening the window; and ultimately compelled to move out of the honor block and forego the privileges associated with this housing assignment.  Dkt. #112, p.33;  Dkt. #116, Exh. I; Dkt. #116, Exh. J; Dkt. #116, Exh. L; Dkt. #116, Exh. R, pp. 49, 51, 68.  Thus, plaintiff has demonstrated a material question of fact as to the subjective component of his Eighth Amendment.

-14-

**Qualified Immunity**

Defendants argue that they are entitled to qualified immunity because their actions were reasonable in light of the circumstances known to them.  Dkt. #109, p.17.  Specifically, defendants assert that it was not clearly established that the facts of this action, *to wit*, limited duration of plaintiff's exposure to ETS while confined in a single cell with a mechanical ventilation system when plaintiff was free to leave his cell for most of the day, could support an Eighth Amendment claim.  Dkt. #109, p.17.

Plaintiff responds that plaintiff's argument is barred by the Court of Appeals' decision in *Warren v. Keane.*  Dkt. #119, p.23.

The doctrine of qualified immunity protects government officials from suits for money damages where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Warren,* 196 F.3d at 332, *quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818, (1982).   Defendants are entitled to qualified immunity if: (1) their actions did not violate clearly established law; or (2) it was objectively reasonable for them to believe that their actions did not violate such law.  *Id*.

In *Warren v. Keane*, the Court of Appeals for the Second Circuit determined "that after *Helling*, it was clearly established that prison officials could violate the Eighth Amendment through deliberate indifference to an inmate's exposure to levels of ETS that posed an unreasonable risk of future harm to the inmate's health."

-15-

196 F.3d at 333.  In addition, the Court of Appeals specifically rejected the "argument that the right must be so narrowly defined as to mirror the facts in *Helling*, where an inmate was double-celled with another inmate who smoked five packs of cigarettes daily," stating that "a court need not have passed on the identical conduct in order for its illegality to be clearly established."  *Id.* (internal quotation omitted).

        As set forth in this decision and the Court of Appeals' prior decision, plaintiff has raised a material issue of fact as to whether plaintiff was exposed to unreasonable levels of ETS; whether defendants were deliberately indifferent to his exposure to ETS; whether DOCS' smoking policies were appropriate; and whether defendants' enforcement of DOCS' smoking policies was sufficient.  These factual questions preclude the Court from determining that defendants' actions were objectively reasonable.  *See Gill v. Smith*, 283 F. Supp.2d 763, 771 (N.D.N.Y. 2003).   As a result, summary judgment cannot be granted on qualified immunity grounds.

**Personal Involvement**

        Commissioner Goord argues that he was not personally involved with the constitutional deprivation alleged by plaintiff.  Dkt. #109, p.10.

        Plaintiff responds that as Commissioner of DOCS, defendant was responsible for creating the allegedly ineffectual policies with respect to smoking in DOCS' facilities.   Dkt. #119, p.22.

It is well settled that the personal involvement of defendants in the alleged constitutional deprivation is a prerequisite to an award of damages under § 1983 and that the doctrine of *resondeat superior* is insufficient.  *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001)*; Colon v. Coughlin*, 58 F.3d at 873.  Personal involvement may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation; (2) was informed of the violation and failed to remedy the wrong; (3) created, or permitted continuation of, a policy or custom under which unconstitutional practices occurred; (4) was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating unconstitutional acts were occurring.  *Colon*, 58 F.3d at 873, *citing Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994).

Although Commissioner Goord denies any knowledge of plaintiff's particular complaints, he is responsible for implementing policies with respect to smoking in DOCS' facilities.  If, as plaintiff alleges, those policies were deliberately indifferent to a condition of confinement posing an unreasonable risk of serious damage to his future health, plaintiff will have established defendant Goord's personal involvement in the deprivation of plaintiff's Eighth Amendment rights.  *See Denis v. New York State Dep't of Corr. Servs.*, No. 05 Civ. 4495, 2006 WL 217926, at *11 (S.D.N.Y. Jan. 30, 2006).  Accordingly, Commissioner Goord's motion for summary judgement on the basis of lack of personal involvement is denied.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment

(Dkt. #108), is **GRANTED** with respect to any claim of excessive force, but otherwise

**DENIED**.


SO ORDERED.


S/ H. Kenneth Schroeder, Jr.
H. KENNETH SCHROEDER, JR.
United States Magistrate Judge


DATED:    Buffalo, New York
          July 28, 2006